IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| ARIZONA LITHIUM COMPANY LTD., an Arizona corporation; IDAHO METALS CORP., an Idaho corporation; INTERNATIONAL COBALT CORP., a Canadian corporation,<br><br>      Plaintiffs/Counter-defendants,<br><br>vs.<br><br>NORTH AMERICAN COBALT, INC., a Nevada corporation,<br><br>      Defendant/Counterclaimant. | Case No: 4:17-cv-00351-DCN<br><br>**MEMORANDUM DECISION AND ORDER** |

## I. INTRODUCTION

Pending before the Court is Defendant's Motion for Summary Judgment (Dkt. 45), Plaintiffs' Motion for Partial Summary Judgment (Dkt. 50), and Defendant's "Motion in Limine to Exclude Expert Opinion Testimony Not Previously Disclosed and Evidence Created by Plaintiffs after Close of Discovery" (Dkt. 59). Following briefing on the motions, the court held oral argument and took the matter under advisement. After fully considering the arguments presented by the parties, and for the reasons set forth below, the Court finds good cause to GRANT in part and DENY in part Defendant's Motion for Summary Judgment, to DENY Plaintiffs' Motion for Partial Summary Judgment, and to dismiss Defendant's Motion in Limine to Exclude Expert Opinion Testimony as MOOT.

## II. BACKGROUND

### A. Factual Background[1]

This lawsuit arises out of a dispute over unpatented lode mining claims located in Lemhi County, Idaho. Plaintiffs/Counter-Defendants Arizona Lithium Company Ltd., and transferees of interests, Idaho Metals Corp. and International Cobalt Corp. (collectively "Arizona Lithium") brought this suit for declaratory relief and to quiet title to mining claim Nos. 1 through 58 inclusive, situated within various sections of Township 21 North, Range 18 East of the Boise Meridian, in Lemhi County, Idaho (collectively, the "BOCO Claims"). Defendant, North American Cobalt Inc. ("NAC"), formally known as Battery Mineral Resources (United States), Inc. ("BMR"), claims a senior possessory interest in 111 "BATT" lode mining claims ("BATT Claims") that cover, in part, the same locations as the BOCO Claims.

The instant motions involve three types of claims: (1) those that overlap or partially overlap; (2) those which do not overlap and which only NAC claims an interest in; and (3) those which do not overlap and which only Arizona Lithium claims an interest in. Arizona Lithium seeks partial summary judgment with respect to some of the BOCO and BATT claims that undisputedly coincide, specifically BATT Claims 60-69 and 80-87, which the parties agree overlap with BOCO Claims 50-58. Arizona Lithium argues the undisputed facts entitle it to a declaratory judgment finding BATT Claims 60-69 and 80-87 are void

---

[1] The Court relies upon NAC's Statement of Facts for its summary of the BATT Claims and Arizona Lithium's Statement of Facts for its summary of the BOCO Claims. Although the Court has made every effort to summarize such facts neutrally, some of them are disputed. Where material, such disputed facts are highlighted in the analysis portion of this decision.

as a matter of law due to NAC's improper staking. Arizona Lithium contends such conclusion would render that land open for mineral exploration and entitle Arizona Lithium to quiet title in BOCO Claims 50-58 based on Arizona Lithium's proper staking and discovery of mineral deposits within such claims.

Arizona Lithium does not seek summary judgment on those claims which do not overlap and which only NAC claims an interest in, but argues there is a question of fact precluding summary judgment as to which BATT and BOCO Claims overlap. Arizona Lithium also seeks to quiet title in BOCO Claims 3-8 "on the undisputed basis that NAC does not seek to quiet title in those claims." Dkt. 50-2, at 7. The parties agree BOCO Claims 3-8 do not overlap with any of the BATT Claims, and that NAC does not claim an interest in BOCO Claims 3-8.

By contrast, NAC suggests summary judgment should be granted because: (1) Arizona Lithium has not made a mineral discovery and cannot claim a possessory right to the BOCO Claims which undisputedly overlap with, and are junior to, NAC's valid claims; (2) Arizona Lithium does not have standing to contest the BATT Claims it does not claim an interest in; and (3) although NAC does not claim an interest in BOCO Claims 3-8, Arizona Lithium's attempt to quiet title in such claims exceeds the Court's jurisdiction.

*1. The BATT Claims*

In early September of 2016, NAC hired Ethos Geological LLC ("Ethos") to stake mining claims for NAC on land that had previously been located by another company, Formation Capital, after Formation Capital allowed its claims to lapse. Prior to staking the BATT Claims, a geologist for Ethos, Scott Close  checked with the Bureau of Land

Management ("BLM") to ensure there were no outstanding claims on file, and also went to the courthouse in Lemhi County to check whether any outstanding claims had been recorded. Close found no competing claims of record in Lemhi County or with the BLM.

On September 7-9, 2016, an Ethos crew headed by Close staked the 111 BATT Claims. Ethos staked many of these claims by hand. Specifically, on September 7, 2016:

> [T]he Ethos crew drove to a trailhead, hiked to a prominent ridge above the area to be staked and established a permanent monument at that location. From that permanent monument, the four Ethos crew members hiked in parallel lines to locate the corners of the top or northern four rows of the BATT Claims. Each row consisted of 18 claims (600x1500 ft each). Each crew member had a GPS device used to accurately place the corner locations. The crew utilized natural monuments, including trees, stumps and other vegetation to locate the corners of the BATT Claims. They affixed tags describing the claim and flagging to each corner monument. . . . It took them all day to locate the corners, finishing up in the twilight[.]

Dkt. 45-2, ¶ 4.

On September 8, 2016, Ethos arranged for a helicopter to come to Salmon to help complete the staking for the remaining BATT Claims. The helicopter arrived on September 9, 2016, and two members of the Ethos crew staked the remaining BATT Claims by hovering over the site of each corner and releasing 4x4 posts from the helicopter onto the ground. Close directed the helicopter to each corner of the remaining BATT Claims using his GPS coordinates. Ethos made two trips on September 9, 2016, and finished staking the area by helicopter that day. Ethos recorded certificates of location for all 111 BATT lode claims with the Lemhi County Recorder on September 9, 2016. As required by statute, Ethos subsequently filed copies of the recorded location notices with the Idaho field office for the BLM less than 90 days after staking the claims. Because it was retained to stake the

claims on NAC's behalf, Ethos later quitclaimed, transferred, and assigned the 111 BATT Claims to NAC. For purposes of its Partial Motion for Summary Judgment, Arizona Lithium seeks a declaration finding BATT Claims 60-69 and 80-87 invalid due to NAC's helicopter staking.

NAC contends an Ethos crew returned to the site of the BATT Claims several times over the course of the next two years. First, one year later, on September 23-24, 2017, Ethos returned to maintain, to explore, and to map the surface geology of the BATT Claims. Ethos returned in December of 2017, to take soil and rock samples and conduct additional site investigation. Ethos again visited the site in April 2018, to stake claims near the BATT Claims. Close returned in June of 2018, to collect rock samples. A four-person Ethos crew returned to the BATT claims in July and August of 2018, to perform additional maintenance work and site investigation, including soil mapping and soil and rock sampling. In September and October of 2018, a six-person Ethos crew continued geologic investigation, and, in purported work toward a discovery of mineral deposits on the BATT Claims, took approximately 300 soil samples covering each BATT Claim, and conducted extensive on-the-ground geophysical exploration. NAC suggests an aerial geophysical survey of the BATT Claims is underway, and that Ethos is developing a drilling plan to submit to the Forest Service for the next stage of investigation of the BATT claims.

In addition to the aforementioned work, NAC contends Ethos has added new claim tags to the corners of the claims over the faded original corner tags, has ensured that all corner posts and monuments are in the correct location and standing, and has affixed copies of the recorded certificates of location and amended certificates in plastic vials to the

corners of all of the BATT Claims. NAC has also paid the required fees and filed the appropriate documents to maintain the BATT Claims for the 2017, and 2018, annual periods.

2. *The BOCO Claims*

In September of 2016, Arizona Lithium hired Carlin Trend Mining Services ("Carlin Trend") to stake the BOCO Claims for Arizona Lithium. Carlin Trend is located in Elko, Nevada, and provides claim staking services in various western states, including Idaho. Carlin Trend's team consisted of Sandi Sullivan, Curtis Barlow, and Parker Walker. Sullivan researched the BOCO Claims project area from Carlin Trend's Elko offices. She searched the BLM's database for public reports on mining claims. Sullivan checked the database several times between August and September 2016, but did not locate any mining claims filed in the proposed project area of the BOCO Claims. Sullivan also attempted to look on the Lemhi County Recorder's website for any claims in the project area that had been recorded with the County, but she was unable to access recorded records via Lemhi County's website.

In late September, 2016, Barlow and Walker traveled to Lemhi County to stake the BOCO Claims. On September 25, 2016, the two began the process of locating the BOCO mining claims. There was no road access to the project area, so they were flown in by helicopter. Walker was left near the south end of the claim block, along with a number of 4x4 milled posts to be placed at designated points to locate the BOCO Claims. Barlow remained on the helicopter to drop the remaining posts in the BOCO Claim block so that he and Walker could return to place the posts at designated corner points. While staking,

both Walker, on the ground, and Barlow, from the helicopter, spotted wooden posts lying on the ground in the same area where they intended to stake the BOCO Claims. The two men stopped the staking process to inspect the posts and attempt to identify the locator.

On each post, Walker and Barlow found a tag dated September 7, 2016. The tag included a reference to "BATT," the corners, and an X with numbers. Barlow immediately consulted Sullivan regarding the BATT posts and asked whether he should continue staking the BOCO claims. Sullivan instructed Barlow to further investigate the area to determine any prior claims work he and Walker could identify.

Barlow and Walker spent most of the rest of September 25, 2016, looking for additional information about the BATT Claims. They searched for paperwork, location monuments, and other corner posts. Barlow and Walker found three BATT posts on the ground. Although they hiked 1,500 feet in all directions (the maximum length of a lode claim) from each BATT post, they did not find any paper notices containing all of the information necessary for a notice of location. Barlow and Walker also flew over the area by helicopter but did not see any additional posts from the air.

Following the team's reconnaissance, Sullivan consulted with Arizona Lithium regarding what Barlow and Walker had observed and asked whether they should continue staking claims. Sullivan and Arizona Lithium ultimately determined the BATT Claims were not likely valid, and that the area remained open for location. Arizona Lithium directed Carlin Trend to continue staking the BOCO Claims unless the team found some evidence that the BATT Claims were legitimate.

Barlow and Walker staked three BOCO Claims on September 25, and staked the remaining BOCO Claims on September 26-28, 2016. As they did so, they continued to look for posts or other evidence related to the BATT Claims. While staking, Barlow and Walker found a total of 10 BATT corners, most of which consisted of orange tags attached to trees, and a total of four posts lying on the ground. Arizona Lithium contends the Carlin Trend team did not observe any notices of location, and that none of the orange tags attached to trees or posts contained the information required to identify the tree or post as a notice of location.

The BOCO Claims were staked by erecting 4x4 inch wooden posts that stood approximately four feet tall. At one corner of each claim, Carlin Trend attached a notice of location to the wooden post using a weather proof red vial. Some of the BOCO Claims were staked using "witness" posts, or posts used to mark a corner where it was impracticable to place a post in the true corner location. Arizona Lithium suggests Carlin Trend used witness posts because of the challenging terrain, including the heavily wooded area, new growth, and downfalls, for safety reasons, and so Barlow and Walker would not need to camp overnight in the remote project area. Arizona Lithium also notes no witness posts were used for location monuments.

After staking the 58 BOCO Claims, Arizona Lithium recorded the BOCO Certificates of Location in Lemhi County, and with the BLM, in December of 2016. Arizona Lithium filed Amended Certificates of Location on January 2, 2018. On October 15, 2018, Sullivan filed Second Amended Certificates to add the name of the relevant mining district (Blackbird) and to correct an omission in the First Amended Certificates.

### B.  Procedural Background

Arizona Lithium filed suit on July 17, 2017, in the Idaho district court for Lemhi County. NAC's predecessor in interest, BMR, removed the matter to the United States District Court for the District of Idaho. Arizona Lithium's initial complaint sought a declaratory judgment invalidating the BATT Claims and quieting title in BOCO Mining Claims 1-58.

On September 27, 2017, NAC moved to dismiss Arizona Lithium's suit for failure to comply with Idaho Code. Dkt. 12. Specifically, NAC suggested Arizona Lithium failed to adequately fulfill the affidavit requirement of Idaho Code section 47-611.[2] After briefing, but before oral argument, Arizona Lithium filed its first amended notices of location. The Court denied NAC's motion to dismiss, concluding that even if the original notices of location were deficient, the amendment was proper and related back to the original date of filing: December 16, 2016.

Arizona Lithium filed its First Amended Complaint on June 13, 2018. Dkt. 31. In its Amended Complaint, Arizona Lithium seeks: (1) declaratory judgment, specifically a declaration of its rights to the BOCO Claims and the invalidity of the BATT Claims; and (2) to quiet title to the BOCO Claims. NAC counterclaimed for declaratory relief finding Arizona Lithium has no right, title, or interest in any of the BOCO Claims which overlap with the BATT Claims, declaring NAC is entitled to possession of the BATT Claims which do not overlap with the BOCO claims, and enjoining Arizona Lithium from trespassing on,

---

[2] The nuances of NAC's argument regarding Arizona Lithium's failure to comply with the affidavit requirement of Idaho Code section 47-611 are detailed in the Court's Order Denying NAC's Motion to Dismiss. Dkt. 26.

or interfering with, NAC's possessory interest in the BATT Claims. Dkt. 34. The parties filed cross-motions for summary judgment on October 19, 2018. Dkt. 45; Dkt. 50.

### III. LEGAL STANDARD

A party is entitled to summary judgment if the "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party has the burden of establishing the absence of a genuine dispute of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The court must view the evidence in the light most favorable to the non-movant and draw all reasonable inferences in the non-movant's favor. *Clicks Billiards Inc. v. Sixshooters Inc.*, 251 F.3d 1252, 1257 (9th Cir. 2001). Although "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge," the "mere existence of a scintilla of evidence in support of the [non-movant's] position [is] insufficient" to avoid summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252-255 (1986). If the "record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citation and quotation marks omitted).

Where, as here, parties file cross-motions for summary judgment, the court "evaluate[s] each motion separately, giving the non-moving party in each instance the benefit of all reasonable inferences." *A.C.L.U. of Nev. v. City of Las Vegas*, 466 F.3d 784, 790–91 (9th Cir. 2006) (quotation marks and citation omitted); *see also Pintos v. Pac. Creditors Ass'n*, 605 F.3d 665, 674 (9th Cir. 2010) ("Cross-motions for summary judgment

are evaluated separately under [the] same standard."). In evaluating the motions, "the court must consider each party's evidence, regardless under which motion the evidence is offered." *Las Vegas Sands, LLC v. Nehme*, 632 F.3d 526, 532 (9th Cir. 2011).

## IV.  ANALYSIS

At the outset, it is necessary to define the nature of the property rights at issue in this dispute. Although the parties ask the Court to quiet title with respect to certain claims, this suit is properly classified as an action to determine competing possessory interests to unpatented mining claims. *Hedrick v. Lee*, 227 P. 27, 28 (Idaho 1924) ("The rights of conflicting locators to an unpatented mining claim can in the very nature of things be the subject of only a possessory action, and not of an action to quiet title in the true sense of the term."). Due to issues regarding standing and jurisdiction, the Court must first dispose of those claims which are not subject to competing possessory interests.

### A.  Non-Overlapping BATT Claims

In its Amended Complaint, Arizona Lithium asks the Court to declare all 111 BATT Claims invalid due to NAC's alleged failure to properly locate such claims. NAC counters that Arizona Lithium does not have Article III standing to challenge 52 of the BATT claims because it is undisputed the BOCO claims do not overlap with any part of those claims.[3]

Standing is a jurisdictional requirement that precedes analysis of the merits. *Krottner v. Starbucks Corp.*, 628 F.3d 1139, 1141 (9th Cir. 2010). The case and controversy requirement of Article III, Section 2 of the Constitution, which constitutes the "irreducible

---

[3] The parties appear to agree there is no overlap between any BOCO Claims and BATT Claims 1-7, 19-24, 37-41, 55-58, 73-78 and 88-111. Dkt. 45-4, Ex. D; *see also* Dkt. 50-2, n. 3. As discussed below, the parties also agree there is a genuine dispute as to whether BATT 59 overlaps with any of the BOCO Claims.

constitutional minimum of standing," requires that a plaintiff must satisfy three elements to establish standing. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). First, a plaintiff must have suffered an "injury in fact"—an invasion of a legally protected interest which is (a) concrete and particularized; and (b) "actual or imminent, not conjectural or hypothetical." *Id*. (internal quotation marks and citations omitted). Second, "there must be a causal connection between the injury and the conduct complained of[.]" *Id*. Third, it must be "likely," as opposed to merely "speculative," that the injury will be "redressed by a favorable decision." *Id*. (quoting *Simon v. Eastern Ky. Welfare Rights Org*., 426 U.S. 26, 38, 43 (1976)). "The party asserting federal jurisdiction bears the burden of establishing [the standing] requirements at every stage of the litigation[.]" *Krottner*, 628 F.3d at 1141.

With respect to the BATT Claims that do not overlap with any of the BOCO Claims, Arizona Lithium has not suffered an "injury in fact" because it does not have a legally protected interest in such claims. Although a plaintiff need only establish a possessory interest in property to show sufficient interest in the property to create a case or controversy, Arizona Lithium does not claim even a possessory interest in non-overlapping BATT Claims. Dkt. 55, at 24 ("Arizona Lithium is not seeking relief as to those non-overlapping claims"). As such, Arizona Lithium does not have standing to contest NAC's non-overlapping claims. *Bowles v. Pro Indiviso, Inc*., 973 P.2d 142, 146 (Idaho 1999) (parties who alleged no interest in the relevant property did not have standing to bring quiet title action); *Hall v. Childers*, 2017 WL 8944051 at *3 (D. Idaho 2017) (dismissing claims of individual plaintiffs who had no legal claim to the property at issue).

In its response to NAC's Motion for Summary Judgment, Arizona Lithium appears to concede that it does not have standing to contest the entirely non-overlapping BATT Claims, but contends there is a question of fact, precluding summary judgment, as to which BATT and BOCO Claims overlap. Dkt. 55, at 24. However, the only specific dispute with respect to claim overlap Arizona Lithium identifies is that "while NAC asserts BATT 59 does not overlap a BOCO Claim, Arizona Lithium asserts BOCO Claims do overlap with BATT 59." *Id*. For purposes of its Reply, NAC assumes that there is a question of fact as to whether BATT 59 partially overlaps with the BOCO Claims. Dkt. 61, at 2, n. 1. Because the parties agree there is a genuine dispute with respect to whether BATT 59 coincides with Arizona Lithium's claims, and both parties claim a possessory interest in the purported overlap, the Court has jurisdiction over BATT 59. The Court also has jurisdiction over those claims the parties appear to agree partially overlap. Dkt. 45-4, Ex. C. The Court does not, however, have jurisdiction over the undisputedly non-overlapping claims. NAC's Motion for Summary Judgment is accordingly granted to the extent it seeks dismissal of Arizona Lithium's challenge to BATT Claims 1-7, 19-24, 37-41, 55-58, 73-78 and 88-111.

## B. Non-overlapping BOCO Claims

Arizona Lithium seeks partial summary judgment quieting title to BOCO Claims 3-8 "on the undisputed basis that NAC does not assert any right, title or interest in these claims, and that these claims are valid lode mining claims." Dkt. 50-2, at 23. Under Idaho's quiet title statute, an action "may be brought by any person against another who claims an estate or interest in real or personal property adverse to him, for the purpose of determining such adverse claim[.]" I.C. § 6-401. It has been held that this section "applies to the quieting

of adverse claims of individuals to land where the title to such land is in the United States."

*Lewiston Lime Co. v. Barney*, 394 P.2d 323, 326 (Idaho 1964) (party claiming possessory interest in mining claims could maintain quiet title action against party claiming adverse interest in such claims, subject only to the paramount title of the United States); *Crandall v. Goss*, 167 P. 1025, 1027 (Idaho 1917) (an action may be maintained for possession of land in controversy and for the purpose of quieting title against a competing possessory right). Here, however, it is undisputed that NAC does not claim a competing possessory interest in BOCO Claims 3-8.

As mentioned, the Court can only adjudicate a live case or controversy. *Thomas v. Anchorage Equal Rights Comm'n*, 220 F.3d 1134, 1138 (9th Cir. 2000) ("Our role is neither to issue advisory opinions nor to declare rights in hypothetical cases, but to adjudicate live cases or controversies consistent with the powers granted the judiciary in Article III of the Constitution."). In property disputes, there is no live case or controversy *in the absence of an adverse claim to the property at issue*. *Whitney v. Randall*, 70 P.2d 384, 388 (Idaho 1937) ("There must be adverse parties to an action or proceeding, whether it be prosecuted under the statute to quiet title or under the declaratory judgment act."); *see also Monreal v. GMAC Mortg*., LLC, 948 F. Supp. 2d 1069, 1079 (S.D. Cal. 2013) (dismissing quiet title action where, *inter alia*, plaintiff did not allege loan servicers and trustee had asserted any adverse claim to the property at issue). Since NAC does not claim an adverse interest in BOCO Claims 3-8, the Court lacks jurisdiction to adjudicate Arizona Lithium's possessory interest in such claims and therefore dismisses them.

Notably, because the Court is also dismissing Arizona Lithium's challenge to the non-overlapping BATT Claims, the Court is similarly without jurisdiction to "declare that NAC is entitled to all right, title and possessory interest in the BATT Claims" as NAC requests in its Amended Counterclaim. Dkt. 34, ¶ 28. Without Arizona Lithium's adverse claim, there is no live case or controversy for the Court to decide with respect to the non-overlapping BATT Claims. BATT Claims 1-7, 19-24, 37-41, 55-58, 73-78 and 88-111 are accordingly dismissed in their entirety from this suit.

### C. Overlapping Claims

Because the Court is without jurisdiction to decide the possessory rights to claims which undisputedly do not overlap, it can only consider the merits of the parties' competing possessory rights with respect to the claims which partially or totally overlap. *Perego v. Dodge*, 163 U.S. 160, 168 (1896) ("It must be remembered that it is 'the question of the right of possession' which is to be determined by the courts," and the "only jurisdiction which the courts have is of a *controversy* between individual claimants") (internal citations omitted) (emphasis added). Arizona Lithium suggests summary judgment is proper granting declaratory relief that "BATT Claims 60-69 and 80-87 are invalid and void because the claim boundaries were not properly marked and the claims lack a sufficient notice of location." Dkt. 50-2, at 10. NAC argues the Court should instead grant summary judgment finding it has a possessory interest in each of the BATT Claims which partially or completely overlap with the BOCO Claims due to Arizona Lithium's bad faith claim-jumping and improper staking.

Under the General Mining Law of 1872, 30 U.S.C. §§ 22-54, every adult citizen of the United States has the right to locate lode mining claims on federal lands open to mineral entry if the claimant can demonstrate the mineral can be mined, removed, and marketed at a profit.[4] 30 U.S.C. § 22; *see also United States v. Coleman*, 390 U.S. 599 (1968). A claimant can then acquire fee title to the claim, and receive a patent, if the claimant demonstrates, among other things, that there is a commercial mineral deposit, annual fees have been paid, improvements have been made, and that there are no prior claims to the land. *Belk v. Meagher*, 104 U.S. 279, 283-84 (1881). "A mining claim perfected under the law is property in the highest sense of that term, which may be bought, sold, and conveyed, and will pass by descent." *Id*. at 283 (citing *Forbes v. Gracey*, 94 U.S. 762, 767 (1876)).

This case does not involve patented mining claims, but instead generally involves which party properly "located" the relevant claims. "Locating" a mining claim means "[e]stablishing the exterior lines of a mining claim or site on lands open to mineral entry to identify the exact land claimed" and "[r]ecording a notice or certificate of location as required by state and Federal law and by this part." 43 C.F.R. § 3832.1(a). Mere locating or staking unpatented claims does not establish title to the area claimed. Instead, proper location "gives the locator a limited defendable right of possession." *Davis v. Nelson*, 329 F.2d 840, 845 (9th Cir. 1964). Among other things, discovery is essential to a valid mining claim. 43 C.F.R. § 3832.21(a)(1) ("Your lode claim is not valid until you have made a discovery."); *Henault Mining Co. v. Tysk*, 419 F.2d 766, 769-770 (9th Cir. 1969) (the only

---

[4] A lode or "vein" is a deposit of valuable minerals between definite boundaries. 30 U.S.C. § 23; 43 C.F.R. § 3832.12. A lode claim is distinct from a "placer" claim, which is not at issue in this dispute.

protection afforded a claim prior to discovery is under *pedis possessio*).

The concept of *pedis possessio* is a right to possession of a mineral claim that arises from diligent attempts to make a discovery following location of a claim. The elements of *pedis possessio* are: (1) actual possession; (2) diligent work directed toward making a discovery; and (3) exclusion of other mineral claimants. *Union Oil Co. of Cal. v. Smith*, 249 U.S. 337, 346 (1919). *Pedis possessio* allows a senior locator to exclude others from a mining claim, but only while the senior locator actually occupies and diligently works toward a discovery on the subject claim. *Geomet Expl., Ltd. v. Lucky McUranium Corp.*, 601 P.2d 1339, 1342-43 (Ariz. 1979). The possession must be actual and physical: constructive possession resulting from recording location notices is insufficient. *Id*.

NAC contends it has satisfied the three elements of *pedis possessio* with respect to the overlapping BATT Claims and thus has a possessory right to exclude Arizona Lithium from asserting any interest in such claims.

However, a mining claim is perfected, even before patent, where a person has properly located the claim, has filed and posted notices of the claim, has actually discovered a valuable mineral deposit, and has maintained the claim thereafter in accordance with state and federal requirements. Perfection preserves a right in the claim as against all adverse claimants. *Clearwater Minerals Corp. v. Presnell*, 729 P.2d 420, 423 (Id. Ct. App. 1986). Before a discovery is made:

> [M]ineral land is in law vacant and open to exploration and location, subject to the well-established rule that no prospector is authorized by any form of forcible, fraudulent, surreptitious, or clandestine conduct to enter or intrude upon the actual possession of another prospector; for every miner in the

public domain is entitled to hold the place in which he may be working
against all others having no better right.

*Hanson v. Craig*, 170 F. 62, 64 (9th Cir. 1909). Thus, *pedis possessio* does not preclude

any other "good-faith prospector from peaceably going within the boundaries [of a

possessory claim] and making a discovery and location." *Id*. Once a discovery has been

made, the doctrine of *pedis possessio* is no longer in play. *Belk*, 104 U.S. at 284. Arizona

Lithium contends it has made a discovery within the BOCO Claims and, coupled with its

valid location,[5] has established valid mining claims.

### 1. Arizona Lithium's Discovery

Discovery of valuable minerals may precede physical location of a claim or the

physical location may precede discovery, however, both must occur before a valid

unpatented mining claim is acquired. *Davis*, 329 F.2d at 845. In the absence of discovery,

"a valid location cannot be completed by the mere performance, upon the claim, of other

acts of location, such as merely posting notice and marking boundaries, or performing

assessment work." 58 C.J.S. *Mines and Minerals* § 52 (2019); *see also Cole v. Ralph*, 252

U.S. 286, 294 (1920) ("In advance of discovery an explorer in actual occupation and

diligently searching for mineral is treated as a licensee or tenant at will[.]").

A valid mineral claim requires discovery of a valuable mineral deposit. *Grant v.

Pilgrim*, 95 F.2d 562, 568 (9th Cir. 1938). "A valuable mineral deposit exists if the mineral

found within the limits of the claim is of such quantity and quality that a prudent person

would be justified in the further expenditure of his favor and means with a reasonable

---

[5] NAC challenges both Arizona Lithium's purported discovery and Arizona Lithium's location.

prospect of success in developing a paying mine." *United States v. Jerry E. Franklin*, 99 IBLA 120, 124 (1987) (citations omitted). This "prudent man" test "has been refined to require a showing that as a present fact, considering historic price and cost factors and assuming that they will continue, there is a reasonable likelihood of success that a paying mine can be developed." *Id*. (internal quotation marks and citation omitted). "However, actual successful exploitation need not be shown—only the reasonable potential for it." *Id*. (citing *Barrows v. Hickel*, 447 F.2d 80, 82 (9th Cir. 1971)). The prudent man test is less strict when applied to contests between adverse claimants than it is when applied between a claimant and the United States. *Converse v. Udall*, 399 F.2d 616, 619-20 (9th Cir. 1968).

As long as a discovery has been made and the location is based thereon, a locator need not be the first or original discoverer of the mineral. Dkt. 55, at 8 (citing *Allen v. Laudahn*, 81 P.2d 734, 739 (Idaho 1938); *Norris v. United Mineral Products Co*., 158 P.2d 679 (Wyo. 1945)). In addition, if it appears that a locator, at the time of making his location, knew that there had been a discovery of a lode within the limits of his location, "he may base his location thereon and thus avoid the necessity of making a discovery for himself." *Allen*, 81 P.2d at 739 (quoting *Pitcher v. Jones*, 267 P. 184, 186 (Utah 1928))). Evidence that claims had been formerly located or worked, and valuable minerals removed, is evidence of discovery that may be adopted by another. *Id*. at 740.

Here, Arizona Lithium relies upon historic showings of a purported discovery evidenced in exploration by Idaho Metallurgical Industries, Inc. ("Idaho Metallurgical"), in 1955. Dkt. 55, at 9. Idaho Metallurgical reported to the U.S. Geological Service Defense Minerals Exploration Administration ("DMEA") the "historical discovery of copper and

cobalt in what is now the BOCO Claims area." [6]  Dkt. 55, at 9; Dkt. 55-7, ¶ 4. Arizona

Lithium claims Idaho Metallurgical outlined "areas of possible mineralized rocks in the

subsurface [of the BOCO Claims]" and "showed that the drilling resulted in positive results

as well, showing some copper and cobalt." Dkt. 55-1, ¶ 2; Dkt. 55-7, ¶ 5. Arizona Lithium

contends these historic showings are supplemented by the close proximity of the BOCO

Claims to valuable mineral deposits Arizona Lithium has discovered in its nearby

Blackbird Mining Camp. Arizona Lithium also states it returned to the BOCO Claims in

August 2018, to obtain rock samples in preparation for filing its plan of operation with the

Idaho Department of Lands and to confirm historic discoveries. While on site, Arizona

Lithium claims it discovered previously undocumented copper and gold mineralization and

confirmation of the historical showings.

    NAC refutes Arizona Lithium's claim of a discovery. First, Neil McCallum, the

geologist who, on behalf of Arizona Lithium, identified the BOCO site project as the place

where Arizona Lithium should stake its claims, confirmed in his deposition that Arizona

Lithium had not made a discovery of a mineral on the BOCO property. Dkt. 51-4, Ex. D,

at 119:1-3. McCallum did state he would consider historical work to constitute a discovery.

*Id*. at ll. 4-6. However, Idaho Metallurgical's findings were summarized in a report created

by the DMEA ("DMEA Report").[7] The DMEA Report notes, "[n]o minerals were

---

[6] Arizona Lithium did not submit the DMEA Report to support its purported discovery. NAC instead submitted the DMEA Report with its Reply brief. Dkt. 60-7, Ex. G.

[7] The DMEA program was established within the Department of Interior in 1951 to explore for critical and strategic minerals. The DMEA program processed exploration applications, such as that by Idaho Metallurgical, to award exploration contracts. DMEA officials would issue Certificates of Possible Production to DMEA contract operators if mine production was likely to result from a successful

produced during the exploration period. An examination of the property on December 6, 1957 disclosed no production. . . . In a February 11, 1960 letter the Operator advised that. . . nothing of any value had been discovered." Dkt. 60-7, Ex. G. Idaho Mettalurgical itself reported to the DMEA that poor recovery in drill holes made "the results uncertain," and that although mineralized zones were encountered, "a commercial grade cannot be assured from existing data." Dkt. 60-6. Ex. F, at iii. Idaho Metallurgical stated further, "[u]nderground exploration is not recommended for either the Bonanza Copper or Tinkers Pride area at the present time. Additional drilling should first more fully investigate the *possibilities* of commercial mineralization."[8] *Id*. at v. (emphasis added).

The Court has doubts about Arizona Lithium's ability to claim a 1955 study as its own discovery for purpose of a valid mining claim. The 60-year old DMEA Report was in the public domain and available to NAC (or any other explorer) before NAC located the BATT Claims. As NAC notes, if the 1955 DMEA Report "shows discovery, then NAC had the same right to rely on this 'discovery,'" and was the senior locator of the BATT Claims. Dkt. 61, at 8. Moreover, although it is true that a locator may base his location on a prior valid discovery, the cases holding as much do not support Arizona Lithium's claim of a discovery based on Idaho Metallurgical's exploration. For example, in *Allen*, 81 P.2d

---

exploration project. In some cases, DMEA officials would issue a royalty obligation that was similar to a Certificate of Possible Production but where no significant discovery had been made. https://pubs.usgs.gov/ds/1004/ds1004_dmea.htm (last visited September 10, 2019). It appears from the DMEA Report that Idaho Metallurgical was issued a royalty obligation, but that this obligation was terminated in 1962 because "the administrative cost to the Government of an on-site royalty audit at this time would be excessive in relation to the amount of possible royalty which might be disclosed." Dkt. 60-7, Ex. G, at 3.

[8] "Bonanza Copper" and "Tinkers Pride" are drilled and trenched prospects within the "Formation North" area of the BOCO Claims. Dkt. 55-7, ¶ 6; Dkt. 55-27, Ex. 18, at 8.

at 740, the facts demonstrated that there had been prior discoveries and extraction of valuable minerals on the relevant land over the course of decades. *Id*. The subsequent locator purchased lapsed mining claims, immediately relocated the claims upon the close of the sale, and had also participated in the prior discovery and actual mining of valuable minerals. *Id*. Similarly, in *Norris*, 158 P.2d at 680-82, a discovery of bentonite was found and mined on the claims. The subsequent locator knew of the extent and location of the bentonite, and had been on the ground and personally witnessed the previous mining before the land became open for relocation. *Id*. By contrast, Arizona Lithium had no involvement in Idaho Metallurgical's prior exploration.

Regardless, even if Arizona Lithium is entitled to rely on Idaho Metallurgical's exploration to claim a discovery, the DMEA Report established that nothing of value was discovered by Idaho Metallurgical. The Ninth Circuit has held that evidence, even if sufficient to support a reasonable prediction that valuable minerals exist at depth, is not sufficient to establish that a prudent man would proceed to development of a mine. *Henault*, 419 F.2d at 769. The prudent man test is not met by simple indication that a vein or lode, yet unexposed, may exist at depth. *Id.* However, such possibility is all that Idaho Mettalurgical's findings can be read to predict. *See, e.g.*, Dkt. 55-7, ¶ 5 (McCallum declaration stating Idaho Metalurgical's exploration "was successful in outlining areas that indicate the *possibility* of mineralized rocks in the sub-surface at a property scale.") (emphasis added). The prudent man test instead requires actual and physical exposure of a vein or lode of mineral-bearing rock, possessing in and of itself a present or prospective value for mining purposes. *Henault*, 419 F. 2d at 769. It appears no such discovery was

made by Idaho Metallurgical.

Further, evidence of a "past discovery is not sufficient to prove the present existence of a valuable mineral deposit, because of the possibility of exhaustion of the deposit and changing economic conditions." *United States v. Gray*, 50 IBLA 209, 211 (1986); *Mulkern v. Hammitt*, 326 F.2d 896, 898 (9th Cir. 1964). Exploration resulting in some positive results more than sixty years ago does not mean a prudent man would proceed to the development of a mine today.

In addition to the Idaho Metalurgical exploration, Arizona Lithium also claims it collected rock and soil samples from the BOCO Claims on August 12, 2018, and suggests it discovered previously undocumented anomalous copper and gold mineralization. However, to prove a discovery, there must be proof of a commercially available ore body. *Cameron v. United States*, 252 U.S. 450, 457 (1965). "A mineralized vein is not the equivalent of a deposit of mineral ore. Such a vein may not contain material of substantial value." *Barton v. Morton*, 498 F. 2d 288, 291 (9th Cir. 1974). NAC also notes Arizona Lithium did not disclose any of the sample results indicating copper and gold mineralization purportedly obtained in Arizona Lithium's August 2018, excursion. NAC argues that without such information, there "is no way to test whether these samples taken after the close of discovery did or did not support a theory of discovery, historic or otherwise." Dkt. 59, at 10. Arizona Lithium appears to concede that the August 2018, results do not constitute a discovery, stating it "is not relying on soil sample results arising out of the August site visit. . . to prove a discovery." Dkt. 63, at 14. Instead, Arizona Lithium states it is its position "that the central claim in this litigation that the Court is to

resolve is which party properly located the claims." *Id.*

Finally, Arizona Lithium also suggests its purported discovery is supplemented by mineral deposits located at the historically mined Blackbird Mine. However, discoveries in an adjacent area are not a substitute for a discovery of minerals within a particular claim. *Ranchers Expl. & Dev. Co. v. Anaconda Co.*, 248 F. Supp. 708, 715 (D. Utah 1965). To prevail on its discovery argument, Arizona Lithium must demonstrate there has been a discovery within the boundaries of *each* BOCO Claim. *Best v. Humboldt Placer Mining Co.*, 371 U.S. 334, 335 (1963); *Cameron*, 252 U.S. at 456 (for a claim to be valid it is essential that the land be mineral in character and that there has been a mineral discovery within the limits of each claim as located). Although Arizona Lithium generally suggests its discovery of mineral deposits within the nearby historically mined Blackbird Mine, its recent location of previously undocumented copper and gold mineralization within the claims area, and Idaho Mettalurgical's exploration together support its claim of a discovery with the BOCO Claims area, it has made no effort to offer claim-by-claim evidence of minerals purportedly discovered on specific BOCO Claims. *See, e.g.*, Dkt. 55, at 9; Dkt. 55-1, ¶¶ 1-4; Dkt. 55-5, ¶ 10; Dkt. 55-7, ¶¶ 4-7. As the *Ranchers* Court explained:

> Discovery of mineral upon one claim in and of itself will not support rights to another claim or group of claims, even though contiguous. To constitute a mineral discovery, something more than conjecture, hope or even indication of mineralization is essential; there must be for a lode claim discovery within rock in place of mineral having actual or potential value or of such a character that a person of ordinary prudence would be justified in the further expenditure of his labor and means on the particular claim, with a reasonable prospect of success in developing a valuable mine. And while liberality in applying these rules will be indulged in determining superiority of rights as between private claimants, and there may be taken into account the geological indications and other discoveries in adjacent area, as well as

utilization made of developing technological aids, these of themselves may not be substituted for discovery of minerals within the exterior of boundaries of the claim in question[.]

248 F. Supp. at 714-15.

Although the issue of whether there has been a discovery is generally a question of fact, *Davis*, 329 F.2d at 846, Arizona Lithium's failure to present sufficient evidence of either a present reasonable likelihood of success that a paying mine can be developed within the BOCO Claims area, or any claim-by-claim evidence of potentially valuable minerals whatsoever, is fatal to its discovery argument. *Matsushita*, 475 U.S. at 587 (if the "record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial."). The Court finds Arizona Lithium has not raised a genuine issue of fact regarding its purported discovery within the BOCO Claims sufficient to defeat NAC's Motion for Summary Judgment on this issue.

### 2. Claim Location

In the absence of a discovery by either party, the parties' rights to the overlapping claims depend upon which party properly located the claims, and which can satisfy the elements of *pedis possessio*. NAC suggests the Court should grant it summary judgment because Arizona Lithium has neither made a discovery nor established *pedis possessio* rights to the BOCO Claims. Setting aside the issue of the parties' ability to meet the elements of *pedis possessio* for the moment, Arizona Lithium correctly suggests *pedis possessio* is not relevant if a purported senior locator has not first properly located a claim. *See Parker v. Jones*, 572 P.2d 1034, 1035 (Or. 1978) ("[T]he requirement of distinctly marking boundaries 'is an imperative and indisputable condition precedent to a valid

location'") (citation omitted); *Belk*, 104 U.S. at 285 ("The right to possession comes only from a valid location. . . . A location to be effectual must be good at the time it is made."); 58 C.J.S. *Mines and Minerals* § 86 (2019) ("The cardinal rule in case of a conflict between mining locations on the same ground is that, other rights being equal, the one who is prior in time in making a valid location is prior in right[.]").

Location of a mining claim is governed by applicable federal requirements, as well as by consistent state requirements. *See* 30 U.S.C. §§ 22 and 28; 43 C.F.R. 3832.11; Idaho Code §§ 47-601 *et. seq*. A properly located claim must comply with both. 30 U.S.C. § 26 (locators of all mining locations situated on the public domain must comply with the laws of the United States and all non-conflicting state and local laws); 43 C.F.R. § 3832.11 (to locate a claim "[y]ou must follow both state and federal law"). Consequently, failure to follow state requirements may invalidate a claim under federal law. *United States v. Haskins*, 59 IBLA 1, 50 (1981); *Roberts v. Morton*, 549 F.2d 158, 162 (10th Cir. 1976).

Both federal law and Idaho law require that a mining claim must be "distinctly marked on the ground so that its boundaries can be readily traced." 30 U.S.C. § 28; I.C. § 47-602. Among other requirements, boundaries "can be readily traced" where the corners of a mining claim are properly staked, monumented, and posted with an appropriate notice of location. 43 C.F.R. § 3832.11(c)(2)-(3). The purpose of requiring the marking of boundaries on the surface of a claim "is to fix the claim—to prevent floating or swinging— so that other persons who in good faith are looking for unoccupied ground in the vicinity of previous locations may be enabled to ascertain exactly what has been appropriated, in order to make their locations upon the residue." *Book v. Justice Mining Co.*, 58 F. 106, 114

(D. Nev. 1893). The law is "complied with whenever stakes and monuments are so placed upon the ground that the boundaries of the location can be traced with reasonable certainty, and without any practical difficulty." *Id*.

Idaho law requires that before recording a notice of location, a locator "must mark the boundaries of his mining claim by placing at each corner or angle of the claim a substantial monument or a post at least four (4) feet in height and four (4) inches square of diameter." I.C. § 47-602. Further, the locator of a mining claim "must at the time of making his location designate his claim" with a written notice of location stating: (1) the name of the locator; (2) the name of the claim and whether it is a lode or placer mining claim; (3) the date of the location and the mining district, if any, and the county in which the claim is located; (4) the directions and distances which describe the claim; and (5) the direction and distance from the corner where notice is posted to such natural object or permanent monument, if any, as will fix and describe in the notice itself the site of the claim. *Id*.

Absolute adherence to location requirements is not required. Rather, "the statutory requirements relating to mining locations are to be liberally construed and . . . only when the locator fails to comply substantially with the law must his mining locations be held invalid[.]" *White v. Ames Mining Co*., 349 P.2d 550, 555 (Idaho 1960). The doctrine of substantial compliance "holds good in a case where a locator has satisfied the intent of the statutes by substantial compliance with them, though he has failed in some minor or technical detail." *Id*. (quoting *Hedrick*, 227 P. at 28). Liberal construction extended to locators will be applied "where locations have been made and held in good faith." *Bismark Mountain Gold Mining Co. v. N. Sunbeam Gold Co*., 95 P. 14, 20 (Idaho 1908) (if the

location was "evidently made in good faith," then the court need not require "strict compliance" with the statutory requirements).

However, where alleged prior mining claims of a defendant on property claimed by a plaintiff were not marked distinctly to enable the plaintiff to trace boundaries, the Ninth Circuit has determined the contested ground remained vacant and open for location at the time plaintiff staked and located subsequent claims. *Vevelstad v. Flynn*, 230 F.2d 695 (9th Cir. 1956). Arizona Lithium suggests as much here, contending the Court should summarily declare NAC did not sufficiently or in good faith mark the BATT Claims 60-67 and 80-87, and, as a result, that the land was vacant and open for location at the time Arizona Lithium located and staked the overlapping BOCO Claims.

The Court must thus first consider whether NAC marked the BATT Claims sufficiently and in good faith so that the boundaries of BATT Claims 60-69 and 80-87 could be traced with reasonable certainty at the time Arizona Lithium subsequently marked the overlapping BOCO Claims. Arizona Lithium first contends the BATT Claims were not located in good faith due to NAC's improper helicopter staking. Arizona Lithium notes NAC simply dropped posts from a moving helicopter positioned 40 to 300 feet above the ground, and that no effort was made to stand the posts up or determine where they actually landed. Arizona Lithium highlights NAC's helicopter pilot's testimony that he was not able to hover in a single area, so that the majority of NAC's staking was done traveling between 10-20 knots, and that some posts shattered upon hitting the ground and others rolled down mountain sides. Dkt. 50-2, at 12-13. Arizona Lithium suggests it is undisputed that BATT Claims 60-69 and 80-87 were not staked in compliance with Idaho law because it is

implausible that dropping posts from a moving helicopter without attempting to erect the posts qualifies as a good faith attempt to place a monument and record a claim as required by Idaho Code section 47-602. *Id*. at 13 ("Posts laying on the ground up to hundreds of feet from the asserted corner of a claim does not constitute marking the boundaries so that they can be readily traced.").

In addition, Ethos filed Certificates of Location with Lemhi County the same day it staked the BATT Claims by helicopter, while Idaho Code section 47-602 requires that *before* recording a notice of location, a locator must mark the boundaries of his mining claim by "placing at each corner or angle of the claim a substantial monument or a post at least four (4) feet *in heigh*t and four (4) inches square or in diameter." I.C. § 47-602 (emphasis added). Arizona Lithium notes it is undisputed that NAC did not return to erect the posts dropped by helicopter to comply with Idaho's requirement that posts be four feet in height prior to filing its Certificates of Location. Arizona Lithium contends that to conclude that NAC's "helicopter staking substantially complies with Idaho law would fundamentally alter how claims can be staked. If this staking is sufficient, no locator will ever need to set foot on the ground again. Idaho law demands more before earning a property right in federal lands." Dkt. 50-2, at 14.

Finally, in addition to its challenge to NAC's helicopter staking, Arizona Lithium contests NAC's compliance with Idaho Code section 47-602 regarding the information required to be contained in a notice of location. This section requires that a notice of location contain the name of the locator, the name of the claim and whether it is a lode or placer mining claim, the date of location and the mining district and name of county where

the claim is located, the directions and distances which describe the claim, and the direction and distance from the corner where the notice is posted to a natural object or permanent monument. I.C. § 47-602. Arizona Lithium argues it is undisputed that the tags on NAC's helicopter stakes did not list whether the claim was a lode or placer claim, the correct date of location, the county of the location, the directions and distances that described the claim, or the directions and distances of the claims to a permanent monument. Dkt. 50-2, at 14-15. Arizona Lithium contends this lack of substantial compliance with Idaho law renders BATT Claims 60-69 and 80-87 void as a matter of law. *Id*. at 15-16.

Arizona Lithium concedes that, in Idaho, "the requirement to mark boundaries does not mandate absolute and exact adherence to the letter of the law." Dkt. 50-2, at 12. Instead, locating mining claims is overlaid with the recognition that the "statutory requirements relating to mining locations are to be liberally construed, and that only when the locator fails to comply substantially with the law must his mining locations be held invalid." *White*, 349 P.2d at 555. Arizona Lithium notes the purpose of Idaho's location requirement is to exact good faith, but contends: "[c]rucially, this means that the liberal construction that is often extended to locators is subject to the important caveat that such a construction will only be applied 'where locations have been made and held in good faith.'" Dkt. 50-2, at 12 (citing *Bismark Mtn.*, 95 P. at 20)). Arizona Lithium argues NAC's helicopter staking and invalid notices of location were such a significant departure from Idaho law that NAC's senior location of BATT Claims 60-69 and 80-87 cannot be considered to have been made in good faith, precluding NAC from asserting any right to possess the BATT Claims. *Id*.

NAC counters that Arizona Lithium does not cite a single case or any other authority

for the proposition that helicopter staking cannot constitute a valid location. Dkt. 56, at 6. NAC contends Idaho Code section 47-602 does not require that posts stand perpendicular to the ground, and notes that the mining statutes of other states explicitly void mining locations where posts are not erect and a certain height above the ground. *Id*. at 8-9. By contrast, Idaho law only requires a locator to mark the boundaries of a claim by "placing" a monument or post at each corner of the claim so that the boundaries are readily traceable. I.C. § 47-602.

NAC also disputes Arizona Lithium's characterization of its helicopter staking, highlighting that the corners of its claims were located by GPS, that the stakes were released at each corner, and that most posts landed exactly where they were placed. Dkt. 56-1, ¶ 22. NAC notes that although the helicopter pilot stated that several posts shattered, he testified that he did not personally observe this because he was focused on flying the helicopter as slowly as possible and was not looking at posts as they were dropped on the ground. *Id*. NAC contends there is no evidence that some posts were hundreds of feet away from the BATT Claims, as Arizona Lithium suggests. *Id*. Instead, when Ethos returned to the site a year later, in September 2017, to perform claims work, "they found all the posts but one in the area where the GPS record showed the posts should be." Dkt. 56, at 8. NAC cites Close's testimony to support the aforementioned position, but the referenced testimony does not state that Ethos found all posts but one in the area where the posts should be. Dkt. 57-8, Ex. H, at 133:7-139:19. However, Close did testify that the Ethos crew was only unable to find two or three of the posts dropped by helicopter in 2016 when they returned to the site in 2017. *Id*. at 143:1-11. NAC also cites the rebuttal report of its

expert witness, Brian Dirk Hatter, stating Idaho law does not prohibit the use of helicopters to place corner posts and that he has used helicopter corner drops in numerous states. Dkt. 56-1, ¶ 23; Dkt. 57-25, Ex. Y.

Moreover, NAC emphasizes the purpose of the monument requirement is to provide notice of a claim to late comers, and notes its posts undisputedly provided notice to Arizona Lithium that the area had already been located. Dkt. 56, at 8-9 (citing *Bismark*, 95 P. at 14; *White*, 349 P.2d at 550; *Independence Placer Mining Co. v. Hellman*, 109 P.2d 1038 (Idaho 1941)). Specifically, Carlin Trend noticed BATT posts by helicopter and located such posts on the ground, but did not look for blazed trees (which can also mark a location under Idaho statute and were utilized by Ethos to mark some corners), did not search the Lemhi County records using any information gathered from the BATT corner posts—even though the BATT claims were recorded and Sullivan testified she could have checked with Lemhi County after locating the BATT corner posts—and Carlin Trend located BATT corner tags (in addition to the stakes dropped by helicopter) identifying that the area had already been located. Dkt. 56-1, ¶¶ 6-9.

Perhaps most significantly, NAC notes Sullivan was able to prepare a map of the BATT claims from coordinates, photos, and numbers Barlow provided from the field. *Id.* at ¶ 8. NAC also cites a September 2016, e-mail between Sullivan and McCallum regarding the BATT posts stating, "[s]o the next steps would be for us to try and register these, and *pretend* like what we found was incomplete?" Dkt. 51-19, Ex. S (emphasis added). In light of this statement and Arizona Lithium's purported ability to trace the boundaries of the BATT Claims from both the stakes dropped by helicopter and Ethos's on the ground claims

work,[9] NAC argues Arizona Lithium intentionally overstaked the BATT Claims in bad faith. Finally, despite the purported deficiencies in its notices of location, NAC contends its notices contained the name of the locator, the date, the adjoining claims, a claims map, and direction of the long and short axis of the claim lines. Dkt. 56-1, ¶ 7. NAC maintains such information gave Arizona Lithium sufficient notice of its claims.

Both the sufficiency of NAC's helicopter staking and notices of location depend upon whether they were sufficient to impart knowledge of the location of the claim to Arizona Lithium. The Idaho Supreme Court has held that, where it appears a mining claim has been located in good faith, "if by any reasonable construction the language used in the notice describing the claim and in reference to natural objects and permanent monuments will impart knowledge of the location of the claim to a subsequent locator, it is sufficient." *Morrison v. Regan*, 67 P. 955, 959 (Idaho 1902); *see also Bismark Min. Co.*, 95 P. at 17 (holding if junior locator had actual notice of the location and boundaries of said claims, neither "he nor his grantees will be permitted to take advantage of some technical defect in the location notice, where it appears that said claims were located in good faith."); *Independence Placer*, 109 P.2d at 1042 (where a person has actual notice that a prior locator is claiming a tract and has continued to prospect, the junior "is not in a position to make a valid location on such property.")

Ultimately, the question of which party validly located the claims area is a matter

---

[9] For instance, NAC notes the corner of BATT 69 was not placed by helicopter but by NAC's stakers who walked the ground by foot. Dkt. 56-1, ¶ 21. In addition, NAC highlights that Arizona Lithium's partial motion for summary judgment does not challenge the corner monuments used by NAC's stakers on the northern half of the BATT Claims that were placed on natural or native materials, such as trees, stumps, branches, cairns, etc. Dkt. 56, at 6, n. 3.

of their respective good faith. *Gerber v. Wheeler*, 115 P.2d 100, 103 (Idaho 1941) (in disputes between competing locators, courts must consider whether the conduct of the junior locator was in good faith); *Ranchers Expl.*, 248 F. Supp. at 729 ("It is axiomatic that a locator must act in good faith, and even though a prior locator's claim may be invalid, bad faith may render the subsequent claim ineffectual."). If NAC made a good faith effort to substantially comply with the law, and, as a result of such effort, Arizona Lithium had actual notice of NAC's claims, Arizona Lithium overstaked the area in bad faith and is not entitled to rely on the purported deficiencies in NAC's location. However, if NAC's location was so deficient as to represent bad faith, and if Arizona Lithium genuinely could not trace the boundaries of NAC's claims, Arizona Lithium cannot be considered to have staked in bad faith and the site was open for location at the time Carlin Trend staked the BOCO Claims.

As summarized above, the evidence regarding both parties' good faith is disputed and cannot be resolved on summary judgment. 35B C.J.S., *Federal Civil Procedure* § 991 (2008) (whether a party acted in good faith is a factual question for the trier of fact); 58 C.J.S. *Mines and Minerals* § 87 (2019) (priority of mining locations is purely a question of fact); *see also Skaw v. U.S.*, 13 Cl. Ct. 7, 28 (1987) (whether the statutory requirements for location have been met is a question of fact); *Continental Oil Co. v. Natrona Services*, 588 F.2d 792, 797 (10th Cir. 1978) (the presence or absence of good faith on the part of relocator was a question of fact for the jury); *Morrison*, 67 P. at 960 ("A liberal construction should be given to location certificates, and their sufficiency. . . is a question of fact."). Given disputed issues of material fact with respect to the sufficiency of NAC's claim

location, the extent of Arizona Lithium's actual notice of the BATT Claims, and the respective good faith of both parties, the Court cannot find either that BATT Claims 60-69 and 80-87 are invalid and void as a matter of law, or that the BOCO Claims are invalid because they were located in bad faith, for purposes of summary judgment.[10]

### 3. *Pedis Possessio* and Arizona Lithium's staking

The parties raise two additional arguments regarding their respective superior rights to the overlapping claims. Like the location issue, each of these arguments raise disputed issues of material fact precluding summary judgment.

#### a. *Pedis possessio*

Notwithstanding NAC's purported improper staking, Arizona Lithium argues NAC has not been in continuous and actual possession of the BATT Claims since 2016, and thus cannot assert a possessory right to the property under the doctrine of *pedis possessio*. Dkt. 55, at 13-15 (citing *Union Oil*, 249 U.S. at 348). As the Ninth Circuit explained in *Davis*:

> A common practice in the western states among prospectors who intend more than a casual exploration of an area thought to contain mineral is first to locate, mark and record the boundaries of the claim, and then to expend time, labor, money and energy on the prospect. Such occupation and working of the claim, even before discovery, gives the locator a limited defendable right of possession and a right which is, in some respects, alienable. . . .

---

[10] Although this case will be tried by the Court in a bench trial, the Court's standard of review is different on summary judgment than it is at trial. In a bench trial on the record, a judge "can evaluate the persuasiveness of conflicting testimony and decide which is more likely true." *Minidoka Irrigation Dist. v. Dep't of Interior*, 406 F.3d 567, 574 (9th Cir. 2005) (quoting *Kearney v. Standard Ins. Co.*, 175 F.3d 1084, 1095 (9th Cir. 1999)). On summary judgment, the Court must instead view the evidence in the light most favorable to the nonmovant. *Id.* Here, the nonmovant with respect to the issue of NAC's good faith is NAC, while Arizona Lithium is the nonmovant with respect to its purported good faith. Both parties have submitted conflicting evidence regarding their respective good faith. Thus, even if the bench trial consists of no more evidence than that currently before the Court on summary judgment, a bench trial is necessary so the Court can resolve a different question: whether the parties have proven their claims, and not whether there is a genuine issue of material fact. *Id.*

In advance of discovery an explorer in actual occupation and diligently searching for mineral is treated as a licensee or tenant at will, and no right can be initiated or acquired through a forcible, fraudulent or clandestine intrusion upon his possession. But if his occupancy be relaxed, or be merely incidental to something other than a diligent search for minerals, and another enters peaceably, and not fraudulently or clandestinely, and makes a mineral discovery and location, the [subsequent] location so made is valid and must be respected accordingly.

329 F.2d at 845 (internal quotation marks and citations omitted).

Citing deposition testimony from Close and others, Arizona Lithium suggests NAC has not occupied or diligently worked toward a discovery on the subject claims and has instead merely returned to the claims to fix its initial inadequate staking. Dkt. 55-1, ¶¶ 17-25. NAC presents conflicting evidence to suggest "it has been actively working on the BATT claims, taking samples, exploring, and laying out geophysical and geotechnical investigations on the ground." Dkt. 61, at 9; Dkt. 45-4, ¶¶ 6, 8.

Specifically, NAC states an Ethos crew returned to the site of the BATT Claims to conduct claims maintenance, and also explored and mapped the surface geology of the BATT claims, in September of 2017. Ethos returned to the BATT Claims in December 2017, to take soil and rock samples and conduct additional site investigation. In June of 2018, Ethos collected rock samples, and in July and August of 2018, Ethos returned again to perform additional site investigation including soils mapping, soil and rock sampling, and investigating and sampling audits. Finally, in September and October of 2018, a six-person Ethos crew returned to the site and took approximately 300 soil samples covering every one of the BATT Claims, mapped locations, and conducted extensive on-the-ground geophysical exploration with probes inserted into the ground at 50 feet intervals. NAC also

contends an aerial geophysical survey is currently underway and that Ethos is developing a drilling plan to submit to the Forest Service for the next stage of investigation of the BATT Claims.

Similarly, even if Arizona Lithium did not stake the BOCO Claims in bad faith, NAC contends Arizona Lithium cannot establish *pedis possessio* because Arizona Lithium has made no effort to discover minerals on the BOCO Claims. Citing McCallum's deposition testimony, NAC suggests Arizona Lithium has not conducted any diligent work towards discovery since staking and recording its location notices in 2016. Dkt. 51-4, Ex. D, at 117:16-25; 118: 13-25. Arizona Lithium responds that it filed this lawsuit in a good faith effort "to determine which party was entitled to the land, to clear any cloud on the title to the BOCO Claims, and to allow Arizona Lithium to proceed in good faith." Dkt. 55, at 16. In addition, Arizona Lithium claims it has returned to the BOCO Claims since they were staked, has proceeded with its overall work program for the BOCO Claims, has filed its Notice of Intent pursuant to 36 C.F.R. § 228.4(a), and was also on site at the BOCO Claims in August of 2018, to obtain rock samples in preparation for filing its plan of operation with the Idaho Department of Lands and to confirm historic discoveries.[11] *Id*.

For purposes of summary judgment, the Court cannot determine which party, if any, has a *pedis possessio* right to their respective claims in light of such disputed material facts. Given that both parties claim they have met the elements of *pedis possessio* here, and both

---

[11] NAC suggests Arizona Lithium has conceded it does not have a *pedis possessio* right, citing Dkt. 55, at 10-11. Arizona Lithium does not make such concession, but instead argues the aforementioned disputed material facts preclude summary dismissal of Arizona Lithium's rights under *pedis possessio*. *Id*.

offer disputed facts to support their respective possessory rights, the issue is reserved for trial.[12]

   b.  *Arizona Lithium's staking*

Finally, NAC suggests that Arizona Lithium's locations do not comply with Idaho law and Federal law and thus, in addition to Arizona Lithium's bad faith, preclude Arizona Lithium from claiming any interest in the overlapping claims. Aside from its alleged overstaking of the BATT Claims despite alleged constructive and actual knowledge of such claims, NAC contends Arizona Lithium violated federal and state law in locating its claims by: (1) failing to properly describe the BOCO Claims in its location notices; (2) failing to refer to the Public Land Survey System ("PLSS"); (3) using improperly chosen permanent monuments; and (4) misusing witness monuments.

Because NAC is the senior locator, the Court must first determine whether NAC staked its claims in good faith and sufficiently so that Arizona Lithium could trace the boundaries of the BATT Claims. As mentioned, resolution of that question depends on disputed material facts the Court cannot resolve on summary judgment. The issue also

---

[12] It may well be that neither party is entitled to claim *pedis possessio*, as it is undisputed that both parties staked their claims and then left. NAC does not dispute that it did not return to the BATT Claims until September of 2017, more than a year after Ethos first staked the BATT Claims in September, 2016. Arizona Lithium does not dispute it did not return to the BOCO Claims area until August 2018, nearly two years after it staked the BOCO Claims in September of 2017. "Whatever the nature and extent of a possessory right before discovery, all authorities agree that such possession may be maintained only by continued actual occupancy by a qualified locator or his representatives engaged in persistent and diligent prosecution of work looking to the discovery of mineral." *Union Oil*, 249 U.S. at 346-348; *see also Hanson v. Craig*, 170 F. 62, 65 (9th Cir. 1909). It is not clear to the Court that either party can establish continued actual occupancy and diligent work toward making a discovery through the handful of site visits they have made between 2016 and the present. However, on the current record, the Court cannot make such determination as a matter of law.

renders consideration of Arizona Lithium's staking premature, as the Court need not consider Arizona Lithium's staking unless it first concludes NAC's staking was invalid. Further, Arizona Lithium's staking and whether it was sufficient to represent good faith compliance with federal and state law is also a question of fact. *See*, *supra*, section IV.C.2. Finally, regardless of which party the Court finds staked the claims in good faith, it will still have to determine whether that party has satisfied the elements of *pedis possessio*— another disputed issue to be resolved at trial—before it can determine that party is entitled to a possessory interest in the BOCO Claims. The Court accordingly declines to further address Arizona Lithium's staking at this stage of the proceedings.

### D. Motion in Limine

In its Motion in Limine (Dkt. 59), NAC argues Arizona Lithium improperly relied upon McCallum for expert witness testimony regarding Arizona Lithium's purported discovery, despite having failed to disclose McCallum as an expert before the deadline for doing so. However, the Court has already concluded Arizona Lithium has not established a discovery, notwithstanding McCallum's declaration. NAC's Motion in Limine is accordingly dismissed as moot.[13]

### V. ORDER

NOW, THEREFORE, IT IS HEREBY ORDERED:

1. NAC's Motion for Summary Judgment (Dkt. 45) is **GRANTED in PART** and

---

[13] NAC also argues the Court should exclude evidence of mineral sampling Arizona Lithium conducted in August of 2018, after the close of discovery. Dkt. 59, at 8-12. However, NAC itself offers evidence of site visits Close conducted in August and September of 2018. Dkt. 45-4, ¶¶ 6-8. Should the issue become relevant, the Court will decide whether either party can present evidence of site visits conducted after the close of discovery at trial.

**DENIED in PART**. The Motion is **GRANTED** to the extent it seeks dismissal of Plaintiff's challenge to the non-overlapping BATT Claims. The Court does not have jurisdiction over the non-overlapping BATT Claims and dismisses BATT Claims 1-7, 19-24, 37-41, 55-58, 73-78 and 88-111 from this action.

2. NAC's Motion (Dkt. 45) is further **GRANTED** to the extent it seeks dismissal of BOCO Claims 3-8. The Court does not have jurisdiction over BOCO Claims 3-8 and dismisses such claims from this action. The Motion is **DENIED** in all other respects.

3. Arizona Lithium's Motion for Partial Summary (Dkt. 50) is **DENIED**.

4. NAC's Motion in Limine (Dkt. 59) is dismissed as moot**.**

5. Within fourteen (14) days of the date of this Order, the parties shall submit their **unavailable** trial dates starting in January, 2020, and also state how many days they believe it will take to try this matter. The Court will then enter a separate Trial Order that sets forth the trial date and various other pretrial deadlines.

DATED: September 30, 2019

David C. Nye
Chief U.S. District Court Judge